SHAW, Banking Com'r, v. GREEN.

No. 9897.

Court of Civil Appeals of Texas. Galveston.

March 5, 1937.

On Rehearing April 22, 1937.

Appellants' Second Rehearing Denied May
20, 1937.

R. F. Spencer and A. J. Lewis, both of
San Antonio, for appellants.

H. W. Wallace, of Cuero, for appellee.

PLEASANTS, Chief Justice.

This is a suit by appellant in his official
capacity against appellee as independent
executor of the estate of Wm. D. Green,
deceased, and Philip Welhausen, surviving
member of the firm of Green & Welhausen,
a partnership composed of William Green
and Philip Welhausen, and the firm of Wel-
hausen & Driscoll, a firm composed of
Philip Welhausen and M. C. Driscoll, to
recover a 100 per cent. stock assessment up-
on 110 shares of capital stock of the First
State Bank of Westhoff, which was closed
by appellant on September 8, 1928, and is
now in his hands for liquidation.

The pleadings in the case are lengthy and
will not be set out in full. It is enough to
say that they were amply sufficient as
against a general demurrer to present ap-
pellant's cause of action and appellee's de-
fenses thereto.

The trial court made and filed findings of
fact, which were not excepted to by either
of the parties to this appeal. These fact
findings are as follows:

"First. The First State Bank of West-
hoff was duly organized and incorporated
and existing under and by virtue of the
general banking laws of the State of Texas
and doing business in the town of Westhoff,
DeWitt County, Texas, and having a capital
stock of $35,000.00 divided into 350 shares
of the par value of $100.00 per share.

"Second. On September 8, 1928, said
bank was closed by the board of directors
thereof and placed in the hands of James
Shaw, Banking Commissioner of Texas, for
the purpose of liquidation in accordance
with the laws of the State of Texas.

"Third. At the time of taking charge of
said bank on September 8, 1928, the said
Banking Commissioner, after a thorough
examination and investigation into the
financial condition of said bank, found that
the same was insolvent on said date, and
also found that said bank was insolvent for
a period of more than twelve months im-
mediately prior to the 8th day of September,
1928, and the court now finds that said bank
was insolvent in accordance with the find-
ing of said plaintiff, acting in his official ca-
pacity.

"Fourth. The said Commissioner acting in his official capacity, in accordance with the law, levied an assessment against all stockholders of said bank owning stock therein, as shown from the stock books and records of said bank at the time it closed, and against those stockholders who had transferred stock therein within a twelve months' period prior to said closing date in amount equal 100 per cent. of the par value so owned or transferred.

"Fifth. The ninety shares of stock involved in this suit were issued to and received by Green & Welhausen on the 13th day of March, 1912, as reflected from the stock books in said bank and that said ninety shares of stock remained in the name of Green & Welhausen on said books and records of said bank until the 23rd day of April, 1928, at which time the certificate evidencing said stock was presented to said bank by William D. Green, independent executor of the estate of William Green, deceased, to be transferred to Welhausen & Driscoll and said stock was so transferred on the books and records of said bank, and on said date to the said Welhausen & Driscoll and remained in their names until said bank was closed; that the ten shares of stock involved in the present trial of this suit were issued to William Green on the 13th day of March, 1912, and that the same appeared on the stock books and records of said bank from the time they were issued until the 18th day of November, 1927, when the same were presented to the bank to be transferred to the firm of Welhausen & Driscoll, and said ten shares were, on the 18th day of November, 1927, transferred to Welhausen & Driscoll and from said date until the closing of said bank remained in the name of said Welhausen & Driscoll up to the time said First State Bank of Westhoff failed.

"Sixth. That the by-laws of said bank provided the ·method of transferring of stock ·in said bank upon the books thereof; that is, by surrender of the existing certificate and cancellation thereof, and issuance of a new certificate in favor of the party entitled thereto.

"Seventh. On July 9, 1924, William Green made and entered into a contract in writing with M. C. Driscoll, by the terms of which he agreed to sell his interest in a large amount of real and personal property then owned by the partnership firm of Green & Welhausen and the 100 shares of stock, the subject matter of this suit, were included in said sales contract. As between the parties thereto, said partnership was dissolved, and the said William D. Green gave written notice of such fact to many of the creditors of Green & Welhausen, and by publishing in the Shiner paper notice of such dissolution, but said 100 shares of stock so sold were not transferred on the books of said bank at that time but remained on said books in the manner and for the time as found in paragraph fifth of these findings. Said contract, at the time of its execution and up to August 23, 1924, was executory in its nature as to Driscoll, but on said last-named date the said William Green by a written. transfer entered into, introduced in evidence in this case, sold all of his right, title and interest in and to ninety shares of said capital stock of the Westhoff bank, part of the subject matter of this suit, and as to his interest in said ninety shares of stock, said sales agreement became fully executed as between the parties thereto.

"Eighth. William Green died on May 10, 1927, and all of his property passed by the terms of his will, as therein provided, subject to the payment of all existing debts. Said 90 shares of stock, at the date of the death of William Green, stood in the name of Green & Welhausen on the books of said bank. Said Westhoff bank at the time of the death of said William Green *owed no debts it could not pay.*"

There is sufficient evidence to sustain all of the fact findings of the trial court.

The trial in the court below without a jury resulted in judgment dismissing the suit against the firm of Welhausen & Driscoll, and in favor of appellant against appellee for the sum of $5,500, a 100 per cent. assessment on 10 shares of the stock which remained on the books of the bank in the name of William D. Green until November 18, 1927, and 45 shares of the original Green & Welhausen stock which were transferred on the books of the bank to M. C. Driscoll on April 20, ·1928. The court refused to render any judgment against Welhausen as surviving member of the firm of Green & Welhausen. Both appellant and appellee excepted to this judgment and prosecute appeal to this court, appellee's grounds of appeal being presented by cross-assignment in his brief answering appellant's brief.

The firm of Welhausen & Driscoll had been adjudged bankrupt and obtained their discharge prior to the rendition of the judgment in the trial court, and the dismissal of that firm from this suit was acquiesced in

by the parties to this appeal, and no complaint is made on this appeal of the failure of the trial court to render judgment against Welhausen as surviving partner of the firm of Green & Welhausen.

■ Some time after the appeal reached this court, we certified to the Supreme Court the controlling questions presented. In an exhaustive opinion by Judge Smedley of the Commission of Appeals, which was approved and adopted by our Supreme Court, the questions were all answered in favor of appellant's contention. The answers of the Supreme Court to the questions certified are found in 99 S.W.(2d) 889, 894. The substance of the holding of the Supreme Court is disclosed in the following quotation from the opinion of Judge Smedley: "The assessment was not made, as is suggested by the first question, against the partnership as the actual owner of the stock. It was made against all stockholders, as shown by the books and records of the bank, and against those stockholders who had transferred stock within twelve months prior to the closing of the bank. The ownership of the stock by the partnership, Green & Welhausen, was shown by the books and records of the bank and the transfer of the stock of record was made within twelve months before the bank closed. In explanation of the affirmative answers to the second and fourth questions, we add that, although the debts for which the assessment was made probably were not in existence before the partnership, Green & Welhausen, was dissolved, and they cannot be said ever to have been actually debts of the partnership during its existence, the partnership was, prior to its dissolution, the actual and record owner of the stock, and it was such record owner until the stock was transferred to Welhausen and Driscoll on April 20, 1928, about five months before the bank was closed. Thus the records of the bank, until the transfer was made on the books, reflected the apparent ownership of the stock by the partnership, Green & Welhausen, and the statute imposed upon the estate of Green, who was a member of that partnership, liability for debts of the bank existing at the date of such transfer. To the answer to the third question should be added the statement that the executor is not personally liable for the assessment. The liability is that of the estate."

In compliance with this opinion, we must sustain appellant's contention and reverse the judgment and render judgment in appellant's favor for $11,000, with interest at 6 per cent. per annum from the date of the trial court judgment, and it has been so ordered.

Reversed and rendered.

## On Motions for Rehearing.

■ Appellee has filed and presented a motion for rehearing, in which our attention is called to an error in our original opinion in rendering judgment for appellant for $11,000. A re-examination of the record discloses that 10 shares of the bank stock involved in this suit, of the value of $100 per share, which appeared on the books of the bank in the name of Philip Welhausen, had so appeared upon the bank's books for several years prior to the insolvency of the bank. There being no evidence to show that the deceased William Green, or the appellee executor, had or asserted any claim of ownership in this stock after the sale of Green's interest in the firm of Green & Welhausen to Driscoll in February, 1924, it is clear that appellee cannot be held liable for the assessment made by appellant upon this 10 shares of stock.

The appellee's motion for rehearing is granted and our former judgment is reformed by eliminating therefrom the $1,000 on these shares and adjudging that appellant is only entitled to recover from appellee the sum of $10,000 with interest thereon.

■ Appellant has also filed and presented a motion for rehearing, complaining of our holding in this case that he is only entitled to recover interest on the $10,000 from the date of the judgment in the trial court.

We think this motion should also be granted. The question presented by motion seems to have been settled in appellant's favor by the authorities presented in appellant's motion. Hill v. South Texas Bank & Trust Co. (Tex.Civ.App.) 73 S.W.(2d) 1043, 1046, in which case a writ of error was denied by our Supreme Court.

In the case cited, the San Antonio Court of Civil Appeals, discussing the authorities, says: "It is true that in Austin v. Guaranty State Bank, 282 S.W. 262, the Texarkana Court of Civil Appeals held that interest was not recoverable as damages, but did not hold that it was not recoverable as interest; the distinction being material in that case as a question of jurisdiction was involved. In Orndorff v. Austin, 294 S.W. 681, the Eastland Court of Civil Appeals, following the case of Austin v. Guaranty State Bank,

supra, held that interest was not recoverable, but mentioned the fact that the federal courts and the courts of almost every other state in the Union allowed interest on assessments. The Supreme Court of the United States, in Casey v. Galli, 94 U.S. 673, 677, 24 L.Ed. 168, said: 'The sum to be paid being liquidated, and due and payable when the comptroller's order was made, it follows that the amount bears interest from the date of the order. Otherwise there would be no motive to pay promptly, and no equality between those who should pay then and those who should pay at the end of a protracted litigation.'"

Appellant's motion must also be granted, and our former holding allowing interest on the assessment from the date of the trial court's judgment be reformed, and interest on the $10,000 adjudged appellant from the date of the assessment.

Motions granted.